FILED
2026 Aug-18 AM 08:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| **UNITED INSURANCE COMPANY OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**BRANDI LIPSCOMB, JAMES LINDSEY, STEPHEN FREEMAN, EDWRICK HENSON, and BRITTANY ALEXANDER,**<br><br>Defendants. | **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Civil Action No. ___________<br><br>JURY TRIAL DEMANDED |

Plaintiff United Insurance Company of America ("United" or "Plaintiff") alleges as follows for its Verified Complaint for Injunctive and Other Relief against Defendants Brandi Lipscomb ("Lipscomb"), James Lindsey ("Lindsey"), Stephen Freeman ("Freeman"), Edwrick Henson ("Henson"), and Brittany Alexander ("Alexander") (collectively "Defendants"):

## NATURE OF THE ACTION

1. This action arises from Defendants' failure to comply with the contractual obligations they owe United, including their misappropriation of United Confidential Information, in a coordinated scheme to recruit numerous United employees to join Security National.

2. Between 2018 and 2024, Defendants Lipscomb, Lindsey, Freeman, Henson, and Alexander each executed the United Employment Covenant Agreement (each an "Agreement"). (A true and correct copy of the Agreement is attached as **Exhibit A**.) Each Defendant executed the Agreement as a condition for becoming an employee of United, selling United insurance products and services, and receiving commissions for the sale of these products and services.

3. Under the Agreement, each Defendant agreed to treat United Confidential Information (defined below) as confidential and only use it on behalf of United. Similarly, Defendants agreed to not disclose United Confidential Information to anyone not authorized to receive or use United Confidential Information. This included not disclosing United Confidential Information to a United competitor and/or not using United Confidential Information on behalf of a United competitor.

4. Not surprisingly then, each of the Defendants agreed to not retain any United Confidential Information and/or property once their Agreement and employment with United terminated.

5. In addition, each Defendant agreed to certain post-termination restrictive covenants. Specifically, each Defendant agreed, for eighteen (18) months following the termination of the Agreement, to not:

> within the geographical limits of the [United] District Office in which [each Defendant was] employed at the time of [his or her] resignation or termination of employment . . . solicit or Contact, either directly or through the direction or control of others, any Customer or Potential Customer of [United] for the purpose of selling any form of life, health, accident or fire insurance, or providing any goods or services competitive with [United] or aid or abet others to do so.

6. Notably, the United "Customers" covered by the above restriction were/are the United payors, policyholders or insureds to whom United sells its insurance products or services.

7. Further, the United "Potential Customers" covered by the above restriction were/are only the United potential customers with whom each Defendant had contact with or possessed United Confidential Information about during the last 12 months of his or her employment with United.

8. The Defendants also agreed not to solicit any United employees that they worked with, supervised, or about whom they received Confidential Information.

9. Defendant Lipscomb's Agreement was terminated on May 1, 2026. Hence, Lipscomb was prohibited from retaining, using, possessing or having access to United Confidential Information after May 1, 2026. Lipscomb was also required to return all United Confidential Information in her possession, custody or control to United on May 1, 2026. Lipscomb was/is prohibited from soliciting United customers and employees until after November 1, 2027.

10. Defendant Lindsey's Agreement was terminated on May 8, 2026. Hence, Lindsey was prohibited from retaining, using, possessing or having access to United Confidential Information after May 8, 2026. Lindsey was also required to return all United Confidential Information in his possession, custody or control to United on May 8, 2026. Lindsey was/is prohibited from soliciting United customers and employees until after November 8, 2027.

11. Defendant Freeman's Agreement was terminated on August 4, 2026. Hence, Freeman was prohibited from retaining, using, possessing or having access to United Confidential Information after August 4, 2026. Freeman was also required to return all United Confidential Information in his possession, custody or control to United on August 4, 2026. Freeman was/is prohibited from soliciting United customers and employees until after February 4, 2028.

12. Defendant Henson's Agreement was terminated on August 4, 2026. Hence, Henson was prohibited from retaining, using, possessing or having access to United Confidential Information after August 4, 2026. Henson was also required to return all United Confidential Information in his possession, custody or control to United on August 4, 2026. Henson was/is prohibited from soliciting United customers and employees until after February 4, 2028.

13. Defendant Alexander's Agreement was terminated on August 4, 2026. Hence, Alexander was prohibited from retaining, using, possessing or having access to United Confidential Information after August 4, 2026. Alexander was also required to return all United Confidential Information in her possession, custody or control to United on August 4, 2026. Alexander was/is prohibited from soliciting United customers and employees until after August 4, 2028.

14. Unfortunately, the Defendants refused (and refuse) to comply with the above obligations.

15. Each Defendant has breached and is currently breaching their Agreements and legal obligations by, among other things: (a) retaining and using United Confidential Information after termination of their employment; (b) soliciting United customers; (c) using United Confidential Information; (d) soliciting and recruiting United employees; and (e) disclosing United Confidential Information to Security National, a direct competitor of United.

16. For example, United has evidence that Defendants breached and are breaching their Agreements in the following ways:

a. Lipscomb admitted that she recruited Lindsey to Security National and suggested to a former United employee working at Security National, Greg Holcomb, that he recruit Freeman to her/their team at Security National. Lipscomb and Lindsey falsely told United that Lindsey was "retiring," but he quickly joined Security National after Lipscomb.

b. Lipscomb and Lindsey solicited United customers in person, thereby demonstrating that they were/are in possession of and using United Confidential Information for their benefit and the benefit of direct competitor, Security National.

c. A United customer informed United that Freeman directly solicited her in early August 2026.

d. A United customer informed United that Henson asked her for information regarding her United policies and directly solicited her.

e. Freeman was observed packing a box of papers containing route lists (one of United's most highly guarded pieces of Confidential Information), customer information, agents and employee information, and contact information. Further, Freeman forwarded customer information to his personal email, including customer data and a death certificate for a particular United insured. The only reason for Freeman to take these actions is so that he could use United Confidential Information at Security National.

f. Freeman and/or Henson recruited United employees Willie Andrews and Adrienne Crawford to join Security National in July 2026. Freeman and Henson also encouraged and/or pressured United employees, including Paul Meyer and Donovan Bradford, to join Security National. A United sales manager further reported that Henson and Freeman openly discussed the benefits of moving to Security National with staff.

g. Henson recruited Lee Wilson to join Security National from United. He also attempted to, and was unsuccessful in, recruiting United employee Jada Johnson to Security National.

h. Alexander left United to work for Security National with Freeman and Henson, indicating that she was solicited by one of the other Defendants.

i. Many of the above illegal recruitment activities undertaken by each of the Defendants occurred while they were still employed by United.

17. The Defendants' departures and the above actions were not independent events. Rather, they represent a coordinated scheme, orchestrated principally by Lipscomb, to shift United's employees, agents, and customers in Alabama from United to its direct competitor, Security National.

18. Consequently, on July 31, 2026, United, through its counsel, sent a letter to Lipscomb demanding that she cease her solicitation and recruitment activities. (A true and correct copy of the letter is attached as **Exhibit B**.) Despite this letter, however, Defendants' solicitation activities and use of United Confidential Information did not cease. Instead, they intensified.

19. Accordingly, Defendants breached, and are currently breaching, the contractual and legal obligations they owe United. If left unchecked, Defendants will continue to breach their obligations by improperly soliciting United customers and employees, and using United Confidential Information to unfairly compete with United.

20. Defendants' actions constitute significant and continuing irreparable harm to United. Immediate injunctive relief is therefore necessary and appropriate to prevent further injury to United.

21. Consequently, United now brings suit against Defendants for breach of contract, misappropriation of trade secrets under the Defend Trade Secrets Act and the Alabama Trade Secrets Act, and replevin. In doing so, United requests that the Court award United injunctive relief for Defendants' intentional and illegal acts.

## THE PARTIES AND RELEVANT ENTITIES

22. Plaintiff United Insurance Company of America is an Illinois corporation with its principal place of business located at 200 East Randolph, Suite 3300, Chicago, IL 60601.

23. Mutual Savings Life Insurance Company ("MSLIC") is an affiliate of United and specifically listed as an "Associated Company" in the "Definitions" section of the Agreement.

24. Security National Life Insurance Company ("Security National") is a direct competitor to United and MSLIC.

25. Defendant Brandi Lipscomb ("Lipscomb") is a resident of Alabama, whose address is 1827 CR 305, Moulton, Alabama 35650. Lipscomb was formerly employed by United as a District Manager in the Decatur district. Her employment with United was terminated on or about May 1, 2026. She is now employed by Security National.

26. Defendant James (Jay) Lindsey ("Lindsey") is a resident of Tennessee whose address is 198 Raven Bluff Road, Lawrenceburg, Tennessee 38464. Lindsey was formerly employed by United as a Staff Manager in the Decatur district. Lindsey departed United the same week as Lipscomb in May 2026 and is now employed by Security National, reporting to Lipscomb.

27. Defendant Stephen Freeman ("Freeman") is a resident of Alabama, whose address is 3009 Teresa Drive, Birmingham, Alabama 35217. Freeman was formerly employed by United as a District Manager in Birmingham (MSLIC District 813). His employment with United was terminated on or about August 4, 2026. He is now employed by Security National on Lipscomb's team.

28. Defendant Edwrick (Rick) Henson ("Henson") is a resident of Alabama, whose address is 2053 Laurel Lake Drive, Tuscaloosa, Alabama 35405. Henson was formerly employed by United as a former Staff Manager and District Manager in the Birmingham and Tuscaloosa area (MSLIC District 813), reporting to Freeman. His employment with United was terminated on or about August 4, 2026. He is now employed by Security National.

29. Defendant Brittany Alexander ("Alexander") is a resident of Alabama, whose address is 671 AL Highway 191, Jemison, Alabama 35085. Alexander was formerly employed by United as an Agent in Birmingham (MSLIC District 813), where she worked closely with Freeman. She is now employed by Security National.

30. Greg Holcomb ("Holcomb") was formerly employed by United as a District Manager in the Decatur district. His employment with United was terminated on November 3, 2017. Holcomb is now a manager or supervisor at Security National and serves as Lipscomb's supervisor at Security National.

**JURISDICTION AND VENUE**

31. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, specifically the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

32. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

33. This Court has personal jurisdiction over each of the Defendants because each is a citizen and resident of the State of Alabama, and each of the Defendants conduct business in Alabama. Venue is proper in the Northern District of Alabama, Northwestern Division, pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to United's claims occurred in this District and Division, the property United seeks to recover is located in this District, and Defendants reside and/or conduct business in this District.

34. In addition, Section 15 of the Employment Covenant Agreement that each Defendant signed provides that "the location of the court for temporary or preliminary injunctive relief shall be within 45 miles of the place where [they] last worked for [United]," and this Court is within that radius for each of the Defendants.

## FACTUAL BACKGROUND

### I. United's Business and Hiring of Sales Representatives.

35. United is a leading provider of insurance services and part of the Kemper Corporation family of companies, including Kemper Life. Established in 1927, United is one of the largest life insurance companies in the United States and offers a complete line of life, fire, and accident and health insurance products through more than 50 district offices and over 1,400 field employees located across the Midwest, mid-Atlantic and Southeastern states, as well as California.

36. United is firmly committed to serving the insurance needs of modest-income families, and, as a home service company, is dedicated to frequent, personal contact with its customers. Thus, in addition to providing the above products and services (collectively "products") directly, United employs Sales Representatives to sell United products and service the needs of United customers.

37. United screens its Sales Representatives to ensure that the representatives are qualified to represent and sell United products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

38. Sales Representatives, including the Defendants, are provided training by United. In that training, Sales Representatives are provided access to United Confidential Information regarding United products and business strategies in order to assist the Sales Representatives with developing business on behalf of United.

39. The Sales Representatives are also provided with highly proprietary Confidential Information about United's business model. This includes Confidential Information that Sales Representatives, such as the Defendants, would not have access to prior to joining United.

40. United expends substantial resources advertising, marketing and promoting its products. The Sales Representatives benefit directly and indirectly from United's advertising, marketing and promotion efforts, as well as from United's goodwill, reputation and name recognition. These efforts and expenditures allow the Sales Representatives to develop and cultivate customer accounts and relationships on behalf of United.

41. Accordingly, United relies heavily upon repeat business to maintain its competitive advantage in the highly competitive insurance industry. Maintaining goodwill and a solid business reputation with its customers and insureds is a critical component of United's success. Indeed, because United's business is a service business, the relationship that each Sales Representative has with a United customer is highly dependent on the attention and excellent service given to the customer on an ongoing basis, and the continued trust the customer places in United as a leading provider of such services.

**II. United's Protection of its Confidential Information.**

42. United customers entrust United and its Sales Representatives to safeguard and protect their private information, which includes information relating to, among other things, their personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure. United customer and policy information allows United to service its customers' needs and solicit the purchase of insurance products and services.

43. United protects its information (described in paragraphs 42, 56, 57, and 72) by, among other things: limiting the disclosure and use of this information to only the Sales Representatives and United employees who need this information to sell United products and service United customers; educating the Sales Representatives about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and requiring the Sales Representatives to execute written agreements that protect against the misuse and improper disclosure of United Confidential Information.

44. Consequently, all Sales Representatives, pursuant to their respective agreements with United and while performing services under their agreements, acknowledge that they will have access to United Confidential Information, promise to not disclose United Confidential Information to anyone not authorized to receive it, and confirm that they will not use United Confidential Information for their own benefit or for any improper purpose.

45. Sales Representatives also agree, upon termination of their employment with United, to continue treating United Confidential Information as confidential; not to disclose, either directly or indirectly, United Confidential Information to any third party; and not to retain any United Confidential Information.

46. Hence, United Confidential Information is not available to the general public and is closely guarded by United. United keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business. The time, expense, and effort that has gone into the development of United Confidential Information is such that the independent development of identical or comparable materials by competitors of United would be extraordinarily difficult and expensive.

### III. Defendants Enter into their Employment Covenant Agreements with United.

47. After proceeding through United's rigorous screening process, each of the Defendants executed an Employment Covenant Agreement with United as a condition for becoming a Sales Representative for United and began selling United products in Alabama.

48. Specifically, Defendant Lipscomb executed the Agreement on or about November 21, 2018, and served as District Manager of the Decatur district.

49. Defendant Lindsey executed the Agreement on or about November 16, 2018, and served as a Staff Manager in the Decatur district.

50. Defendant Freeman executed the Agreement on or about November 20, 2018, and served as District Manager in Birmingham.

51. Defendant Henson executed the Agreement on or about November 16, 2018, and served as a Sales Manager in Birmingham.

52. Defendant Alexander executed the Agreement on or about September 16, 2024, and served as an Agent in Birmingham.

53. Defendants sold products for, among other United companies, Mutual Savings Life Insurance Company ("MSLIC"). MSLIC is an affiliate of United and specifically listed as an "Associated Company" in the "Definitions" section of the Agreement.

54. In their roles, Defendants had access to United Confidential Information for all United customers serviced in Decatur and Birmingham.

55. Under the Agreement, the Defendants acknowledged:

a. [T]he success of [United] in this very competitive field depends to a substantial extent upon (i) the technical training of [Defendants] concerning the Business of [United] and (ii) maintaining strict secrecy with respect to [United's] Confidential Information;

b. [Each of the Defendants] has acquired or has access to or may hereafter acquire or have access to Confidential Information of [United] during the course of his employment with [United]; and

c. [United has] spent and/or will hereafter expend substantial time and money in training [Defendants] in the various facets of the Business of [United] and in imparting Confidential Information of [United] to [Defendants].

(Agreement, p. 1).

56. Under the Agreement, each of the Defendants acknowledged that "Confidential Information" means "information of [United] that (i) relates to the business of [United], (ii) possesses an element of value and/or advantage to [United] as a result of being confidential and not generally known to [United] competitors, and (iii) would damage [United] if disclosed to [United] competitors or the public." (Agreement, Definition F).

57. Under the Agreement, the following information is United "Confidential Information" and property:

> (i) future business plans; (ii) rate books, underwriting guidelines, commission schedules, customer lists; (iii) communication systems, audio systems, system designs and related documentation; (iv) advertising or marketing plans; (v) methods, techniques, financial data, financial plans, product plans, and lists of actual or potential customers or suppliers which is not commonly known by or available to the public; (vi) information regarding independent contractors, clients and customers of [United], including confidential contact information; (vii) human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any employee of [United]); (viii) information concerning [United's] financial structure and methods and procedures of operation; and other information relating to [United] "Business" which has not been made generally available to the public.

(Agreement, Definition F).

58. Pursuant to Section 2(b)(i) of the Agreement, each of the Defendants agreed to only use or disclose United Confidential Information on behalf of, and as authorized in writing by, United.

59. Pursuant to Section 2(b)(ii) of the Agreement, each of the Defendants agreed that, upon termination of his or her employment with United, he or she would not retain United Confidential Information. Nor would he or she destroy, delete, or alter United Confidential Information without United's written consent.

60. Each Defendant also agreed to certain post-termination restrictive covenants when he or she signed the Agreement.

61. Specifically, each Defendant agreed for eighteen (18) months following the termination of the Agreement, to not:

> within the geographical limits of the [United] District Office in which [each Defendant was] employed at the time of [his or her] resignation or termination of employment or in any District in which [he or she] may have been previously employed . . . solicit or Contact, either directly or through the direction or control of others, any Customer or Potential Customer of [United] for the purpose of selling any form of life, health, accident or fire insurance, or providing any goods or services competitive with [United] or aid or abet others to do so.

(Agreement, § 3).

62. The above provision is limited to "current Customers of [United] with whom [Defendants] had Contact or possessed Confidential Information." (Agreement Attachment B.)

63. United "Customers" covered by the above restriction were/are the United payors, policyholders or insureds to whom United has sold its insurance products or services. (Agreement, Definition H).

64. Further, United "Potential Customers" covered by the above restriction were/are only the United potential customers with whom Defendants had contact with or possessed United

Confidential Information about during the last 12 months of his employment with United. (Agreement, Definition I).

65. The Agreement defines "Contact" as "any interaction between [Defendants] and a Customer or Potential Customer, regardless of who initiated the interaction, which takes place in an effort to establish, maintain, and/or further a business relationship with the Customer or Potential Customer for the purpose of selling any form of life, health, accident or fire insurance, or providing any goods or services competitive with the Business or aid or abet others to do so." (Agreement, Definition G).

66. In addition, each Defendant agreed, pursuant to Section 4 of the Agreement as modified by Attachment B (Alabama Modifications), for eighteen (18) months following the termination of the Agreement, to not: "participate in soliciting any Covered Employee of the Company that is in a Sensitive Position to leave the employment of the Company on behalf of (or for the benefit of) a competing business nor will [Defendants] knowingly assist a competing business in efforts to hire a Covered Employee away from the Company." (Agreement, § 4).

67. A United "Covered Employee" is an employee with whom Defendants worked, as to whom Defendants had supervisory responsibilities, or regarding whom Defendants received Confidential Information during Defendants' last two years of employment with United. A United employee in a "Sensitive Position" refers to an employee that is uniquely essential to the management, organization, or service of the business." (Agreement, Attachment B.)

68. Each Defendant acknowledged that United "would suffer irreparable harm," and "money damages alone would be an inadequate remedy for the injuries suffered by [United]," if he or she breached the Agreement. (Agreement, § 5).

69. Consequently, each Defendant agreed that if he or she breached Sections 2 or 3 of the Agreement, then United can "seek temporary or preliminary injunctive relief . . . from any state or Federal court that has jurisdiction." (Agreement, § 5(c)).[1]

70. Similarly, if United "seeks injunctive relief to enforce this Agreement, [the Defendant] will waive and will not (i) assert any defense that [United] has an adequate remedy at law with respect to the breach, (ii) require [United to] submit proof of the economic value of any trade secret, or (iii) require United to post a bond or any other security." (Agreement, § 5(d)).

71. Each Defendant also agreed that United would be "entitled to recover attorneys' fees and costs of litigation, in addition to all other remedies available at law or in equity," if the Defendant violated the terms of the Agreement. (Agreement, § 7).

## IV. Defendants Breach Their Agreements and Violate their Legal Obligations to United.

72. District Offices, such as the Decatur and Birmingham districts, service United customers through, among other things, "route lists."

73. The route list is one of United's most sensitive and important Confidential Information/trade secrets, and contains, among other things, the contact, policy, and personal information of specific United customers.

74. Sales Representatives are provided the route list on a weekly basis and Sales Representatives use the route lists to personally call and visit United customers.

75. District Managers, Staff Managers, and Agents have access to the route lists of each Sales Representative who operated out of their respective district offices, among other Confidential Information.

[1] Pursuant to the Agreement, all other claims or disputes between United and Defendants are subject to Arbitration. (Agreement, §§ 5(c), 10, 12, 15).

76. Hence, each Defendant had access to, and possessed, United Confidential Information about all United customers who were serviced by their respective district offices.

77. Not surprisingly then, each Defendant was required to return all United information and property, including United Confidential Information such as route lists, to United when his or her employment and Agreement terminated.

**a. Lipscomb Breaches the Agreement and her Legal Obligations to United.**

78. Lipscomb served as District Manager of the Decatur district for United. In this role, Lipscomb had access to United Confidential Information for all United customers serviced by the Decatur district.

79. Lipscomb's Agreement and employment with United terminated on or about May 1, 2026.

80. Accordingly, Lipscomb was prohibited from retaining, using, possessing or having access to United Confidential Information after May 1, 2026.

81. Lipscomb was also required to return all United Confidential Information in her possession, custody or control to United on May 1, 2026.

82. Lipscomb was and is restricted from soliciting United customers in the Decatur Office territory and recruiting United employees until November 1, 2027.

83. Unfortunately, Lipscomb has flagrantly violated her Agreement and legal obligations since her departure.

84. For example, in or about early June 2026, United Regional Vice President Angel Hackett ("Hackett") spoke with Lipscomb on the telephone. During that conversation, Lipscomb admitted to recruiting Lindsey to leave United and join Security National.

85. Hackett also spoke with Lindsey, who confirmed that he left United because Lipscomb recruited him.

86. Lipscomb previously told United that Lindsey was leaving United to "retire," a false statement.

87. Lipscomb also directed Freeman to contact Holcomb—Lipscomb's supervisor at Security National and former United employee—about employment with Security National.

88. Upon information and belief, Lipscomb also recruited Henson to leave United for Security National to work for Freeman under Lipscomb's team.

89. Thus, Lipscomb orchestrated the departure of Lindsey, Freeman, and Henson to Security National.

90. Further, on August 4, 2026, United Sales Manager Stephen Tanner encountered Lipscomb and Lindsey working a customer route in United's territory. When confronted, Lipscomb and Lindsey admitted to soliciting Kemper customers.

91. Lipscomb's and Lindsey's admission that they were soliciting lapsed Kemper customers demonstrates that they possessed United Confidential Information. Put another way, the only way Lipscomb and Lindsey could know the location and route of United customers is if they possessed United Confidential Information (i.e. a route list).

92. Thus, Lipscomb violated her Agreement with United by (a) retaining and using United Confidential Information after termination of her employment; (b) soliciting United customers using United Confidential Information, including route lists; (c) soliciting and recruiting United employees; and (d) using United Confidential Information on behalf of Security National.

93. On July 31, 2026, United, through its litigation counsel, sent a letter to Lipscomb reminding her of her post-termination obligations under the Agreement and demanding that she immediately cease her illegal solicitation activity.

94. Lipscomb ignored United's demands and continues to solicit United customers and recruit United employees in violation of her Agreement and legal obligations.

**b. Lindsey Breaches the Agreement and his Legal Obligations to United.**

95. Defendant Lindsey served as a Staff Manager in the Decatur district for United. In this role, Lindsey had access to United Confidential Information, including customer information for United customers serviced by the Decatur district.

96. Defendant Lindsey's Agreement was terminated on May 8, 2026.

97. Accordingly, Lindsey was prohibited from retaining, using, possessing or having access to United Confidential Information after May 8, 2026.

98. Lindsey was also required to return all United Confidential Information in his possession, custody or control to United on May 8, 2026.

99. Lindsey was and is prohibited from soliciting United customers in the Decatur office territory and recruiting United employees until after November 8, 2027.

100. Unfortunately, Lindsey has flagrantly violated his Agreement and legal obligations since his departure.

101. Lindsey initially claimed that he was departing United because he was "retiring." This statement was false. Instead, Lindsey was leaving United to join Security National.

102. Then, on August 4, 2026, United Sales Manager Stephen Tanner encountered Lindsey working a customer route with Lipscomb in United's territory. When confronted, Lindsey and Lipscomb admitted to soliciting Kemper customers.

103. Lipscomb's and Lindsey's admission that they were soliciting Kemper customers demonstrates that they possessed United Confidential Information. Put another way, the only way Lipscomb and Lindsey could know the location and route of United customers is if they possessed United Confidential Information (i.e. a route list).

104. Thus, Lindsey violated his Agreement with United by (a) retaining and using United Confidential Information after termination of his employment; (b) soliciting United customers using United Confidential Information, including route lists; and (c) using United Confidential Information on behalf of Security National.

**c. Freeman Breaches the Agreement and his Legal Obligations to United.**

105. Defendant Freeman served as District Manager in Birmingham for United. In this role, Freeman had access to United Confidential Information, including information for all United customers serviced in Birmingham.

106. Freeman's Agreement and employment with United terminated on or about August 4, 2026.

107. Accordingly, Freeman was prohibited from retaining, using, possessing or having access to United Confidential Information after August 4, 2026.

108. Freeman was also required to return all United Confidential Information in his possession, custody or control to United on August 4, 2026.

109. Freeman was and is restricted from soliciting United customers in the Birmingham territory and recruiting United employees until after February 4, 2028.

110. Unfortunately, Freeman has flagrantly violated his Agreement and legal obligations since his departure.

111. On August 5, 2026, United administrative clerk Tyanna Cook ("Cook") observed Freeman packing a box of papers containing United Confidential Information as he prepared to leave the United office. Specifically, Cook observed that Freeman packed customer lists, route lists, and personnel information that Freeman had no right to retain after termination of his employment.

112. Freeman removed the box of papers containing United Confidential Information from the United office.

113. Moreover, Freeman forwarded United Confidential Information, including customer information, from his United work email address to his personal email address.

114. The only reason for Freeman to take these actions is so that Freeman could use United Confidential Information at Security National.

115. Further, a United customer indicated that Freeman directly solicited her in early August 2026.

116. Freeman worked with Henson to recruit United employees Willie Andrews and Adrienne Crawford to join Security National in July 2026.

117. Freeman and Henson also encouraged and/or pressured United employees, including Paul Meyer and Donovan Bradford, to join Security National.

118. A United sales manager further reported that Henson and Freeman openly discussed the benefits of moving to Security National with staff.

119. Thus, Freeman violated his Agreement with United by (a) retaining and using United Confidential Information after termination of his employment; (b) soliciting United customers using United Confidential Information, including route lists; (c) soliciting and recruiting United employees; and (d) using United Confidential Information on behalf of Security National.

**d. Henson Breaches the Agreement and his Legal Obligations to United.**

120. Defendant Henson served as Staff Manager and District Manager in Birmingham and Tuscaloosa areas.

121. In this role, Henson had access to United Confidential Information, including customer information for United customers serviced by the Birmingham and Tuscaloosa districts.

122. Henson's Agreement and employment with United terminated on or about August 4, 2026.

123. Accordingly, Henson was prohibited from retaining, using, possessing or having access to United Confidential Information after August 4, 2026.

124. Henson was also required to return all United Confidential Information in his possession, custody or control to United on August 4, 2026.

125. Henson was and is restricted from soliciting United customers in his territory and recruiting United employees until February 4, 2028.

126. Unfortunately, Henson has flagrantly violated his Agreement and legal obligations since his departure.

127. For example, a United customer informed United that Henson asked her for information regarding her United policies and directly solicited her.

128. Henson also solicited and recruited several United employees to join Security National.

129. Henson recruited Lee Wilson to join Security National from United, and Henson worked with Freeman to recruit United employees Willie Andrews and Adrienne Crawford to join Security National in July 2026.

130. Henson and Freeman also encouraged and/or pressured United employees, including Paul Meyer and Donovan Bradford, to join Security National.

131. Henson further attempted to, and was unsuccessful in, recruiting United employee Jada Johnson to Security National.

132. A United sales manager further reported that Henson and Freeman openly discussed the benefits of moving to Security National with staff.

133. Moreover, upon information and belief, Henson retained United Confidential Information, including customer information and route lists, after his departure from United. Upon information and belief, Henson retained United Confidential Information so he could use the United Confidential Information for his benefit or the benefit of Security National.

134. Thus, Henson violated his Agreement with United by (a) retaining and using United Confidential Information after termination of his employment; (b) soliciting United customers using United Confidential Information, including route lists; (c) soliciting and recruiting United employees; and (d) using United Confidential Information on behalf of Security National.

**e. Alexander Breaches the Agreement and her Legal Obligations to United.**

135. Defendant Alexander served as an Agent in Birmingham for United. In this role, Alexander had access to United Confidential Information, including customer information for United customers she serviced.

136. Alexander's Agreement and employment with United terminated on or about August 4, 2026. Accordingly, Alexander is restricted from soliciting United customers and recruiting United employees until February 4, 2028.

137. Upon information and belief, Alexander is soliciting United employees, agents, and customers and/or using United Confidential Information for her benefit or the benefit of Security National.

## V. Defendants' Actions Caused (and are Causing) Irreparable Harm to United.

138. Defendants are actively and openly refusing to comply with the duties and obligations they owe United by soliciting United customers and employees and continuing to use, access, and possess United Confidential Information.

139. United's success depends in large part on maintaining and fostering its customer relationships and goodwill. Those relationships and goodwill depend on the service that United provides to its customers.

140. Defendants are harming United's customer relationships and goodwill by illegally misappropriating and possessing United Confidential Information. They are also harming United's customer and employee relationships and goodwill by illegally soliciting United customers and employees.

141. Similarly, Defendants have harmed, and continue to harm, United's legitimate business interests by, *inter alia*, retaining, misusing and refusing to return United Confidential Information, and by soliciting United customers and employees to leave United.

142. Furthermore, if a competitor obtained confidential United customer information, then the competitor would be able to unfairly compete with United. For example, a competitor could use confidential United customer information to contact United customers and offer those customers competing products and services based upon terms and conditions that undercut United. This is what is happening here.

143. Defendants' conduct also poses probable and imminent harm to United customers. By continuing to possess and use United Confidential Information, Defendants can potentially share United Confidential Information with third parties who have no right to see or possess such information (or use the information to illegally compete with United).

144. Hence, United's Confidential Information, business interests and goodwill are at significant risk because Defendants are in breach of the Agreement and are misappropriating and using United Confidential Information.

145. Accordingly, United is suffering irreparable harm and immediate injunctive relief is necessary and appropriate to prevent further damage to United. Similarly, injury to United is both probable and imminent because Defendants clearly intend to continue using United Confidential Information and soliciting United customers and employees.

## COUNT I

### Breach of Contract – Against All Defendants

146. United repeats and re-alleges Paragraphs 1 through 144 of the Complaint, as if fully set forth herein.

147. On the dates specified herein, Defendants Lipscomb, Lindsey, Freeman, Henson, and Alexander each entered into the Agreement with United.

148. Under the Agreement, each Defendant promised that he or she would not solicit United customers for eighteen months after the Agreement and his or her United employment terminated. (Agreement, § 3, as modified by Attachment B).

149. Similarly, each Defendant agreed to not use or disclose United Confidential Information to anyone not authorized to receive or use the information. (Agreement, § 2).

150. Each Defendant also agreed to not retain any United Confidential Information once the Agreement and his or her employment with United terminated. (*Id.*)

151. Each Defendant further agreed to not use United Confidential Information for any purpose other than on behalf of United either before or after the Agreement terminated. (*Id.*)

152. Each Defendant also agreed to not solicit, recruit, encourage, or induce United employees to terminate his or her employment relationship with United for eighteen months after the Agreement terminated. (Agreement, § 4, as modified by Attachment B).

153. The post-termination covenants found in the Agreements are reasonable in scope and duration; and are necessary to protect United's legitimate business interests in its Confidential Information, goodwill, and longstanding customer and employee relationships.

154. United has performed all of the duties and obligations it owes each Defendant under the Agreement.

155. Each Defendant has breached and continues to breach the Agreement by, *inter alia*: (a) retaining and using United Confidential Information; (b) misusing United Confidential Information to solicit United customers; (c) soliciting United customers; and/or (d) soliciting and recruiting United employees.

156. United has incurred, and will continue to incur, significant damages as a result of Defendants' breaches of their Agreements. Specifically, United has suffered the loss of customers, potential customers, and employees. Defendants' actions have also damaged United's goodwill, reputation, and legitimate business interests. United's damages, described above, are well in excess of $75,000.00

157. Moreover, Defendants' breaches of the Agreement are continuing and ongoing. United is therefore threatened with continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

158. United has no adequate remedy at law and, unless immediate injunctive relief is granted, United will continue to be irreparably harmed by Defendants' breaches of the Agreements in a manner that is not fully compensable by money damages.

159. United therefore requests that this Court grant immediate injunctive relief against Defendants that: (a) orders Defendants to immediately return any and all United Confidential Information within Defendants' possession, custody, or control to United; (b) restrains the Defendants, and/or anyone acting in concert with them, from using United Confidential Information; and (c) restrains Defendants from soliciting United customers and employees until after their restrictive periods conclude on November 1, 2027 (Lipscomb and Lindsey) and February 4, 2028 (Freeman, Henson, and Alexander).

160. Finally, and pursuant to Section 7 of the Agreements, United is entitled to recover the attorneys' fees and costs United incurs as a result of Defendants' breaches of the Agreements.

## <u>COUNT II</u>

### Misappropriation of Trade Secrets, Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* – Against All Defendants

161. United repeats and re-alleges Paragraphs 1 through 159 of the Complaint, as if fully set forth herein.

162. During the course of his or her relationship with United, each Defendant was provided access to substantial amounts of United Confidential Information. This information allowed each Defendant to solicit business for United and service United customers. This includes the information identified in paragraphs 42, 56, 57, and 72.

163. For instance, each Defendant had access to United route lists that identified the names, addresses, and ages of United policyholders or prospective policyholders.

164. Each Defendant knew or should have known that United customer information, as described above, (1) is confidential; (2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (3) was developed or acquired by United at great expense and effort; (4) was maintained as confidential and is not generally available to the public and United's competitors; (5) would provide significant benefit to a competitor seeking to compete with United; and (6) is critical to United's ability to conduct its business successfully.

165. The information described in paragraphs 42, 56, 57, and 72 is not available to the general public and is closely guarded by United. United keeps such information strictly confidential in order to protect its customers' privacy and maintain a competitive advantage in the highly competitive insurance business.

166. United Confidential Information is therefore considered a trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq*., because the information is not generally known outside of United's business, the information is not generally known by employees and others involved in United's business, United has taken reasonable measures to guard the secrecy of the information, the information is of great value to United and its competitors, United invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because United continuously uses the information in its business. 18 U.S.C. § 1839.

167. Each Defendant knew and understood that he or she was under a contractual obligation to return all United Confidential Information to United upon termination of his or her Agreement:

a. Lipscomb was under a contractual obligation to return all United Confidential Information to United by May 1, 2026.

b. Lindsey was under a contractual obligation to return all United Confidential Information to United by May 8, 2026.

c. Freeman was under a contractual obligation to return all United Confidential Information to United by August 4, 2026.

d. Henson was under a contractual obligation to return all United Confidential Information to United by August 4, 2026.

e. Alexander was under a contractual obligation to return all United Confidential Information to United by August 4, 2026.

168. Each Defendant was also not permitted to use the information for any purpose other than in connection with United.

169. Each Defendant, however, ignored (and continues to ignore) his or her contractual obligations by maintaining possession of United Confidential Information, using the Confidential Information to unfairly compete with United, and/or passing the Confidential Information along to third parties who are not authorized to receive, possess, or access United Confidential Information.

170. Defendants' solicitation of United customers and employees demonstrates that they misappropriated and retained United trade secrets after the termination of their United employment.

171. The economic value of the United trade secrets that Defendants had access to is over $75,000.00.

172. Unless restrained, Defendants will continue to use, divulge, disclose, acquire and/or otherwise misappropriate United Confidential Information.

173. Furthermore, actual or threatened misappropriation of Confidential Information may be enjoined under the DTSA.

174. It is axiomatic that Defendants actively using United Confidential Information and ignoring the terms of the Agreements demonstrates that Defendants have no intention of complying with the DTSA.

175. Consequently, Defendants' actions constitute the actual and/or threatened misuse of United Confidential Information. Injunctive relief against Defendants is therefore appropriate.

176. Because Defendants' misconduct is continuing and poses significant irreparable harm, United requests that this Court grant immediate injunctive relief against Defendants that: (a) orders Defendants to immediately return any and all United trade secrets within their possession, custody or control to United; and (b) restrains Defendants, and anyone acting in concert with them, from using any United trade secrets for their own benefit and/or from disclosing United trade secrets to anyone not authorized to receive the information.

177. Finally, Defendants' misappropriation of United Confidential Information has been willful and malicious, and United has incurred significant damages as a result of Defendants' misappropriation.

178. Defendants' actions have also damaged United's goodwill, reputation, and legitimate business interests.

179. United is therefore entitled to recover punitive damages and attorneys' fees resulting from Defendants' wrongful misappropriation of United Confidential Information.

## COUNT III

**Trade Secret Misappropriation, Alabama Trade Secrets Act, Ala. Code §§ 8-27-1, *et seq.* -- Against All Defendants**

180. United repeats and re-alleges Paragraphs 1 through 178 of the Complaint, as if fully set forth herein.

181. During the course of their employment with United, each Defendant was exposed to substantial amounts of United Confidential Information.

182. For example, each Defendant had access to United customers' personal data, date of birth, social security numbers, types of products, amount of insurance and products, premium amounts, renewal dates, description and location of assets and property, claims histories, financial needs, pricing information, and other financial and personal information.

183. The information described in paragraphs 42, 56, 57, and 72 is not available to the general public and is closely guarded by United. United keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.

184. This information constitutes a protectable trade secret under the Alabama Trade Secrets Act, Ala. Code §§ 8-27-1 *et seq*., because United derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

185. The economic value of the United trade secrets that Defendants had access to is over $75,000.00.

186. Each Defendant misappropriated United Confidential Information when he or she retained United Confidential Information, such as route lists and customer lists, without United's

permission after his or her Agreement terminated. Defendants are using the stolen Confidential Information to improperly solicit United customers and employees and unfairly compete against United.

187. Pursuant to Ala. Code § 8-27-3, this Court may grant injunctive relief to prevent any actual or threatened misappropriation of trade secrets.

188. Defendants' illegal and wrongful retention and use of United Confidential Information constitutes the actual and threatened misuse of United trade secrets. Injunctive relief is therefore appropriate.

189. Accordingly, United requests that this Court enter an immediate injunction enjoining Defendants, and anyone acting in concert with them, from using any United Confidential Information, and from disclosing United Confidential Information to anyone not authorized to receive it.

190. United also requests an order requiring Defendants to return United's Confidential Information, as provided by Ala. Code § 8-27-3.

191. In addition, Defendants' actions have damaged United's goodwill, reputation, and legitimate business interests.

192. Defendants' misappropriation of United Confidential Information is willful and malicious, and Defendants acted with improper means and/or deliberate indifference to the rights of United by using United Confidential Information to target United customers and employees.

193. Based on Defendants' willful and malicious misappropriation, United is entitled to exemplary damages, as well as attorneys' fees, pursuant to Ala. Code §§ 8-27-4.

**COUNT IV**

**Tortious Interference with Contract – Against Lipscomb**

194. United repeats and re-alleges Paragraphs 1 through 192 of the Complaint, as if fully set forth herein.

195. United had valid and enforceable Agreements with Lindsey, Freeman, Henson, and Alexander.

196. Lipscomb knew of the Employment Covenant Agreements binding Lindsey, Freeman, Henson, and Alexander because Lipscomb executed an identical Agreement with United.

197. Lipscomb intentionally induced Lindsey, Freeman, Henson, and Alexander to breach their Agreements.

198. Specifically, Lipscomb admitted to recruiting Lindsey, directed Freeman to contact Holcomb about Security National employment, and facilitated the coordinated departure of the entire group to Security National.

199. Holcomb then facilitated the departure of Freeman to Security National.

200. Lipscomb's actions were not justified or privileged.

201. As a direct and proximate result of the tortious interference by Lipscomb, United has suffered and continues to suffer damages, including loss of employees, loss of customers, loss of goodwill, and other compensatory damages well in excess of $75,000.00.

**COUNT V**

**Detinue / Replevin, Ala. Code § 6-6-250, *et seq*. – Against All Defendants**

202. United repeats and re-alleges Paragraphs 1 through 200 of the Complaint, as if fully set forth herein.

203. All acts complained of herein occurred within Alabama.

204. United owns certain property, including the Confidential Information identified in paragraphs 42, 56, 57, and 72. At all relevant times, United is and was entitled to possession of said property.

205. The value of United's Confidential Information exceeds $75,000.

206. Between at least May 1, 2026 and the present, Defendants have wrongfully detained United's property, including United Confidential Information.

207. For example, Lipscomb and Lindsey wrongfully retained confidential customer/policyholder information including route lists and customer lists that they used to identify and solicit United customers. This information constitutes United Confidential Information that Lipscomb and Lindsey have no right to retain.

208. Freeman wrongfully retained a box containing United route lists with customer information and previous agents' or pre-hire personal data sheets with contact information. This information constitutes United Confidential Information that Freeman has no right to retain.

209. Upon information and belief, Henson and Alexander wrongfully retained customer information, route lists, and other Company Materials after their departure from United. This information constitutes United Confidential Information that Henson and Alexander have no right to retain.

210. United demanded the return of United's property from Defendants through letters dated July 31, 2026 to Lipscomb and communications between Plaintiff's employees and the Defendants.

211. Defendants refused and continue to refuse to return United's property, including the route lists and other Confidential Information identified in paragraphs 42, 56, 57, and 72.

212. Consequently, Defendants have wrongfully deprived, and continue to wrongfully deprive, United of possession of its property. As a result of the wrongful detention of United's property by Defendants, United has suffered damages in an amount to be proven at trial.

213. The property sought by United has not been taken for tax, assessment, or fine pursuant to a statute nor has the property been seized under an execution or attachment against the property.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff United Insurance Company of America respectfully requests that this Court enter judgment in their favor and against Defendants and grant the following relief:

a. Enter an injunction enjoining and restraining all Defendants and all those acting in concert or participation with them, from using, possessing, disclosing, or having access to any United Confidential Information;

b. Enter an order requiring all Defendants to return all United Confidential Information and company materials to United;

c. Enter an injunction enjoining the Defendants, and all those acting in concert or participation with them, from soliciting United employees or agents to terminate their employment with United or to join any competitor of United for the duration of their respective Restricted Periods;

d. Enter an injunction enjoining Defendants, and all those acting in concert or participation with them, from soliciting United customers;

e. Award United its attorneys' fees and costs of litigation; and

f. Award United such other relief as the Court may deem just and proper.

Dated: August 17, 2026

Respectfully Submitted,

**UNITED INSURANCE COMPANY OF AMERICA,**

By Counsel.

*/s/Brett Adair*
Brett Adair
Adair Law Firm, LLC
1200 Corporate Drive, Suite 107
Birmingham, AL 35242
(205) 995-5080
Brett@adair-law.com

J. Scott Humphrey (*pro hac vice forthcoming*)
Katie M. Burnett (*pro hac vice forthcoming*)
Samantha Marchand (*pro hac vice forthcoming*)
Benesch Friedlander Coplan and Aronoff, LLP
71 South Wacker Drive
Suite 1600
Chicago, IL 60606
(312) 624-6420
shumphrey@beneschlaw.com
kburnett@beneschlaw.com
smarchand@beneschlaw.com

***Counsel for Plaintiff United Insurance Company of America***

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of August, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing, and attach same for service on the following:

Brandi Lipscomb
1827 CR 305
Moulton, Alabama 35650

James (Jay) Lindsey ("Lindsey")
198 Raven Bluff Road
Lawrenceburg, Tennessee 38464

Stephen Freeman
3009 Teresa Drive
Birmingham, Alabama 35217

Edwrick (Rick) Henson
2053 Laurel Lake Drive
Tuscaloosa, Alabama 35405

Brittany Alexander
671 AL Highway 191
Jemison, Alabama 35085

*<u>/s/ Brett Adair</u>*
Brett Adair

Of Counsel